2022 IL App (1st) 210815-U

SECOND DIVISION
August 30, 2022

No. 1-21-0815

NOTICE: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | |
| | ) | Appeal from the |
| Respondent-Appellee, | ) | Circuit Court of |
| | ) | Cook County. |
| v. | ) | |
| | ) | No. 16 CR 10909 |
| MICHAEL R. BERRY, | ) | |
| | ) | Honorable |
| Petitioner-Appellant. | ) | Marc Martin, |
| | ) | Judge Presiding. |
| | ) | |

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court. Justices Howse and Cobbs concurred in the judgment.

**SUMMARY O R D E R**

¶ 1    *Held*:  Appeal dismissed for want of jurisdiction.

¶ 2    After a jury trial in the circuit court of Cook county, the petitioner, Michael R. Berry, was

convicted of cyberstalking (720 ILCS 5/12-7.5(a-3)(2) (West 2016)) and electronic harassment

(720 ILCS 5/26.5-3(a)(5) (West 2016)) arising from a series of electronic communications that he

sent to his then-wife's attorney, Robert Boszko, during the pendency of their marital dissolution proceedings. The petitioner was sentenced to 90 days in jail followed by 30 months' probation. The petitioner now appeals *pro se* from the second-stage dismissal of his *pro se* petition for relief under the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq*. (West 2018)). He contends that the circuit court erred in denying his motion for default judgment prior to the State's filing its motion to dismiss. In addition, the petitioner asserts that his petition should have been permitted to proceed to an evidentiary hearing where he made a substantial showing that: (1) the State lacked probable cause because the arresting detective "forged" the relevant felony complaint; (2) the State committed a *Brady* violation by failing to disclose the defective felony complaint; (3) the petitioner's pretrial defense attorney had a conflict of interest, namely a personal relationship with the arresting detective; and (4) the petitioner was actually innocent. For the following reasons, we lack jurisdiction to consider the petitioner's claims and dismiss his appeal.

¶ 3                                    I. BACKGROUND

¶ 4     Because jurisdiction is dispositive, we only summarize the relevant facts and procedural history. In January 2016, the petitioner, who is a resident of Texas, and has a history of employment in the energy field, was charged with two counts of cyberstalking (720 ILCS 5/12-7,5(a-3) (1), (2) (West 2016)) and one count of harassment through electronic communications (720 ILCS 5/26.5-3(a)(5) (West 2016))) for threats he made, *inter alia*, via email to Boszko. The petitioner was initially represented by private counsel but chose to proceed *pro se* at his jury trial.

¶ 5     The evidence adduced at trial established that during Boszko's representation of the petitioner's ex-wife, the petitioner sent Boszko 16 threatening electronic communications. In addition, on July 13, 2015, the petitioner had a verbal exchange with Boszko outside the domestic

2

relations courtroom, which required the intervention of a deputy sheriff.

¶ 6    According to the trial record, the most egregious emails were sent after this occurrence. Specifically, at 2 a.m. on the morning following the incident, the petitioner sent an email confirming that he had earlier asked if Boszko knew the difference between a "threat" and a "warning." The email stated, "I have warned you repeatedly to stop, you choose otherwise, *i.e.* warning. I make no distinction between evil and the instrument that evil decides to use. You crossed a rubicon [*sic*] today."

¶ 7    Later that day, the petitioner sent a second email threatening Boszko's economic well-being and law license but declaring that everything would be done "legally" and without "physical harm." About two minutes later, the petitioner sent a third email advising Boszko that if he had done his "homework" he would know that the petitioner was "kind of 'a corporate consigliore' " who "deal[s] [with] a very serious group of people at a very different level than [Boszko] could comprehend." The email then attached a newspaper article link concerning the unsolved murder of a family in the petitioner's hometown, Cyprus, Texas. The murders purportedly related to a corruption involving a Chinese oil company. Later that same day, the petitioner sent another email, saying he was "deadly serious" and that his "friends in D.C." knew about Boszko, and that he was known in Rolling Meadows, D.C., Houston and "certainly Beijing." The petitioner declared "[i]nfamy is not good."

¶ 8    The petitioner sent three more emails to Boszko on the evening of July 14, 2015. Among other things, the first email referenced the street gang "Crips" and lawyers not going "after" each other but stated that the petitioner "will" go after Boszko. The second email stated: "This brainchild is owed many, many favors. I am calling one in and that is to your detriment. *** I am one completely thorough human being. Brace yourself [.]" The last email stated: "Your client is a

cancer. You have caught cancer."

¶ 9    Additional emails sent by the petitioner to Boszko between July 15 and July 16, inferred, among other things, that the petitioner had caused another lawyer to lose his law license and had forced a judge in Texas to drop-out of a judicial race.

¶ 10    Boszko testified that he took the petitioner's communications as threats to his and his family's personal safety. After his law firm reported the emails to the police, patrols were set up at Bozko's law firm, his wife's workplace, and their family home. In addition, Boszko filed a no-contact stalking order against the petitioner and installed surveillance cameras at his wife's workplace and their home.

¶ 11    Based on these facts, the jury found the petitioner guilty of all charges. The circuit court subsequently merged the electronic harassment conviction into the cyberstalking conviction and sentenced the petitioner to 90 days in jail and 30 months of probation.

¶ 12    The petitioner appealed his sentence and conviction on March 23, 2018. His appeal was dismissed by this court on October 24, 2018. See *People v. Berry*, No. 1-18-0669 (Oct. 24, 2018) (unpublished order pursuant to Illinois Supreme Court Rule 23) (*Berry I*).

¶ 13    On November 25, 2019, while on probation, the petitioner, filed a *pro se* postconviction petition pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq*. (West 2018)), alleging, albeit inartfully, that: (1) the State had failed to prove the necessary *mens rea* for cyberstalking; (2) there was no probable cause because the felony complaint alleging cyberstalking was not signed by Boszko but by Detective Velisaris in violation of section 111-3 of the Code of Criminal Procedure of 1963 (Criminal Procedure Code) (725 ILCS 111-3 (West 2018)); (3) the State committed a *Brady* violation by failing to disclose and provide him with the "forged" felony complaint during discovery; (4) his bail was excessive; (5) he was actually innocent; (6) he was

unreasonably seized; (7) his second amendment rights (U.S. Const., amend II) were violated because he could no longer carry a concealed handgun in Texas; and (7) his pretrial counsel was ineffective for failing to disclose his personal relationship with Detective Velisaris and for failing to conduct an adequate investigation.

¶ 14    Within 90 days of the petitioner's filing, and without any input from either side, in accordance with section 122-2.1 of the Act (725 ILCS 5/122-2.1 (West 2018)), the circuit court docketed the petition for second stage postconviction review. In doing so, the court found each of the petitioner's claims were patently frivolous and without merit but moved the case to the second stage to examine any potential constitutional issues stemming from the offenses charged. As the court stated:

> "Each of the[] [petitioner's] specific claims is patently frivolous and without merit. However, liberally construing the petitioner's submission as a whole, the gist of a constitutional claim has been stated. Statutes similar to the ones under which the petitioner was charged have been the subject of significant appellate debate in recent times. *** In light of [t]his authority, constitutional challenges to the cyberstalking statute may be considered colorable for purpose [*sic*] of determining whether the gist of a constitutional claim has been stated. The same can be said for the mental state and proof requirements under statutes requiring proof of a threat."

¶ 15    On June 12, 2020, the petitioner's probation was terminated successfully.

¶ 16    On September 25, 2020, without prior leave of court, the petitioner filed an amended *pro se* petition, raising and expounding on the same issues raised in his original petition.

¶ 17    On December 18, 2020, after a status hearing, the case was continued to January 29, 2021, for the State's response.

¶ 18   On January 28, 2021, one day before the State's response was due, the petitioner filed a motion for default judgment alleging that the State had failed to respond to the allegations in his petition and asking for his conviction to be vacated.

¶ 19   On January 29, 2021, the State filed a motion to dismiss the petitioner's amended complaint. On March 12, 2021, the State also filed a response to the petitioner's motion for default judgment, alleging that default judgments were unavailable as a remedy in postconviction proceedings.

¶ 20   On March 19, 2021, the court denied the petitioner's motion for default judgment and allowed the petitioner retroactive leave to file his amended petition.

¶ 21   After hearing extensive arguments by the parties, and taking the case under advisement, on June 11, 2021, the court dismissed the petitioner's *pro se* amended complaint, finding that the petitioner had failed to make a substantial showing of any of his constitutional claims.

¶ 22   The petitioner filed his notice of appeal on July 13, 2021, seeking reversal of the court's June 11, 2021, order.

¶ 23                                    A. ANALYSIS

¶ 24   On appeal, representing himself, the petitioner argues that the denial of his motion for default judgment was improper. In addition, he contends that he made a substantial showing of the following constitutional claims: (1) that the State lacked probable cause because Detective Verisalis "forged" his felony complaint; (2) the State committed a *Brady* violation by failing to disclose the complaint in discovery; (3) the petitioner's pretrial defense attorney had a conflict of interest, namely a personal relationship with Detective Verisalis; and (4) the petitioner was actually innocent.

¶ 25   Before addressing the merits of the petitioner's claims, however, we must first address the

State's contention that we are without jurisdiction to consider this appeal because it was untimely filed.

¶ 26    For the following reasons, we agree with the State and find that we are without jurisdiction to consider the petitioner's appeal.

¶ 27    It is axiomatic that a timely filed notice of appeal is necessary to establish this court's jurisdiction. See *People v. Hansen*, 2011 IL App (2d) 081226, ¶ 6 (citing *Secura Insurance Co. v. Illinois Farmers Insurance Co.,* 232 Ill. 2d 209, 213 (2009)) ("A timely filed notice of appeal is both jurisdictional and mandatory."). When an appellant fails to file a timely notice of appeal, we lack jurisdiction and must dismiss the appeal. See *People v. Lewis*, 234 Ill. 2d 32, 37 (2009); see also *Secura*, 232 Ill. 2d at 217-18 (explaining that the appellate court has no authority to excuse the filing requirements of supreme court rules governing appeals). Whether we have jurisdiction over the petitioner's appeal is a question of law subject to *de novo* review. *People v. Salem*, 2016 IL 118693, ¶ 11.

¶ 28    Illinois Supreme Court Rule 651(d) provides that appeals in postconviction proceedings, such as the one here, are governed by the rules applying to criminal appeals. See Ill. S. Ct. R. 651(d) (eff. July 1, 2017) ("The procedure for an appeal in a post-conviction proceeding shall be in accordance with the rules governing criminal appeals.") Therefore, pursuant to Illinois Supreme Court Rule 606(b), the petitioner was required to file his notice of appeal within 30 days of the entry of the order disposing of his postconviction petition. See Ill. S. Ct. R. 606(b) (eff. July 1, 2017) ("the notice of appeal must be filed with the clerk of the circuit court within 30 days after the entry of the final judgment appealed from.")

¶ 29    Here, the circuit court dismissed the petitioner's *pro se* petition on June 11, 2021. The petitioner therefore had 30 days from that date to file a timely notice of appeal. See Ill. S. Ct. R.

606(b) (eff. July 1, 2017). Thirty days from June 11, 2021, was July 11, 2021. Yet, July 11, 2021, was a Sunday, thereby making the notice of appeal actually due by July 12, 2021. See 5 ILCS 70/1.11 (West 2016) ("The time within which any act provided by law is to be done shall be computed by excluding the first day and including the last, unless the last day is Saturday or Sunday or is a holiday *** and then it shall also be excluded.") The petitioner's notice of appeal, however, was file-stamped July 13, 2021, one day after that deadline. See Ill. S. Ct. R. 373 (eff. July 1, 2017) ("[T]he time of filing records, briefs or other documents required to be filed within a specified time will be the date on which they are actually received by the clerk of the reviewing court. *** This rule also applies to *** the notice of appeal filed in the trial court."); see also Ill. S. Ct. R. 612(b)(18) (eff. July 1, 2017) (making Supreme Court Rule 373, which is a civil appeals rule relating to the constructive date of filing documents in the reviewing court, applicable to criminal appeals). The transmittal sheet from the circuit court to the appellate court, confirms that the notice of appeal was filed on July 13, 2021. What is more, the petitioner himself acknowledges that he filed the notice of appeal on that date. In the jurisdictional statement of his appellate brief, he states that he is appealing from the final order entered on Jun 11, 2021, and that he "filed a *** notice of appeal on July 13, 2021." Therefore, the petitioner's notice of appeal was untimely.

¶ 30    Moreover, the petitioner never sought leave to file a late notice of appeal. See Ill. S. Ct. R. 606(c) (eff. July 1, 2017). Nor was he incarcerated at the time of such filing, so as to potentially avail himself of the mailbox rule. Ill. S. Ct. R. 373 (eff. July 1, 2017) (providing that if an "incarcerated, self-represented" litigant files a document after its due date, the time of mailing as provided in Rule 12, "shall be deemed the time of filing."). Accordingly, we lack jurisdiction and must dismiss his appeal. See *People v. Smith*, 228 Ill. 2d 95, 104 (2008).

¶ 31    In doing so, we acknowledge that the petitioner's notice of appeal was filed during the

COVID-19 pandemic. However, effective September 1, 2020, our supreme court vacated its order of March 24, 2020, which temporarily extended the period for filing notices of appeal from 30 to 60 days. See *In re Illinois Courts Response to COVID-19 Emergency*, M.R. 30370 (Aug. 28, 2020). Since the petitioner's notice of appeal was filed well after the vacatur of that emergency order, we lack authority to review any appeal filed beyond the ordinarily mandated 30-day deadline. See *Lewis*, 234 Ill. 2d at 37; see also *Secura*, 232 Ill. 2d at 217-18.

¶ 32                                    III. CONCLUSION

¶ 33    Accordingly, we dismiss the petitioner's appeal for lack of jurisdiction.

¶ 34    Appeal dismissed.